IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ARTHUR DEMAREST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:23-cv-00932 |
| | ) | |
| BRIGITTE KOVACEVICH, | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| Defendant. | ) | |

## **MEMORANDUM**

Pending before the Court is Defendant Brigitte Kovacevich's ("Kovacevich") Motion for Summary Judgment. (Doc. No. 78). Plaintiff Arthur Demarest ("Demarest") filed a response in opposition (Doc. No. 91) and Kovacevich filed a reply (Doc. No. 94).

Also pending before the Court are Kovacevich's motions for leave to file documents under seal (Doc. Nos. 76, 79, 81, 96) and to amend the protective order (Doc. No. 100). Pursuant to the Court's May 27, 2025 Order (Doc. No. 97), non-party Vanderbilt University filed a response in support of Kovacevich's motions to seal. (Doc. No. 102).

For the reasons discussed below, Kovacevich's summary judgment motion (Doc. No. 78) is **GRANTED** in part and **DENIED** in part. Kovacevich's motion to seal the employment agreement and related correspondence (Doc. No. 76) is **GRANTED**. Kovacevich's remaining motions to seal (Doc. Nos. 79, 81, 96) are **GRANTED** in part and **DENIED** in part. Kovacevich's motion to amend the protective order (Doc. No. 100) is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2006, Kovacevich graduated from Vanderbilt University with a Doctor of Philosophy degree in Anthropology.[1] (Def. SOF ¶ 1). Demarest is employed by Vanderbilt as a Professor of Anthropology in the Anthropology Department. (Def. SOF ¶ 2). In 2005, Kovacevich and other graduate students made allegations of sexual harassment and gender discrimination against Demarest. (Def. SOF ¶ 3). Vanderbilt conducted an investigation of the allegations and sent Demarest a letter dated September 2, 2005, advising that the allegations were serious and corroborated. (Def. SOF ¶¶ 4, 9).

Demarest, Vanderbilt University, and Kovacevich entered into a confidential settlement agreement on January 8, 2008. (Pl. SOF ¶ 10, Doc. No. 93-2). The settlement agreement included a non-disparagement provision stating that Kovacevich "her family, agents, or attorneys shall not criticize, denigrate, or make any disparaging remarks concerning Dr. Demarest or Vanderbilt University." (Pl. SOF ¶ 12). The settlement agreement provides that "[i]n the event that any party is asked about the Lawsuit, each party shall respond only that 'All allegations against Vanderbilt and/or Demarest were denied and have now been dismissed and I/the University have/has no further comment.'" (Pl. SOF ¶ 13). The settlement agreement also states that "all critical comments relating to the character, nature or reputation of either party are strictly prohibited." (Pl. SOF ¶ 14).

The settlement agreement includes a confidentiality provision stating "[t]he parties agree that they, and all of them, will maintain in strict confidentiality, and will not disclose, to any person, including any member of the communications media, the press, journalists, reporters or any current, future or former employee of Vanderbilt, the terms and conditions of this Agreement

---

[1] Kovacevich's Statement of Undisputed Material Facts (Doc. No. 82), together with Demarest's response (Doc. No. 92), is cited as "Def. SOF ¶ ____" and Demarest's Statement of Undisputed Material Facts (Doc. No. 93), together with Kovacevich's response (Doc. No. 95), is cited as "Pl. SOF ¶ ____."

except as expressly provided in this paragraph or pursuant to the terms of a court order or discovery request in a legal proceeding." (Pl. SOF ¶ 15).

The parties are both members of the Society of American Archeology ("SAA"). (Def. SOF ¶ 6). In 2019, the SAA created a Code of Conduct that requires registrants for the SAA annual meeting to self-certify if they have ever been the subject of adverse findings from a discrimination or harassment lawsuit or administrative complaint or found at fault in a disciplinary action. (Pl. SOF ¶ 23; Def. SOF ¶ 6; Doc. No. 1-2 at PageID # 51). Demarest did not advise the SAA that he had been disciplined for Title IX offenses, gender discrimination, or sexual harassment. (Def. SOF ¶ 7).

After the SAA created its Code of Conduct, Kovacevich advised the SAA that she was involved in an investigation of Demarest in 2005 and 2006 for sexual harassment at Vanderbilt University and provided a letter from the EEOC in which the EEOC stated that Demarest had been disciplined by Vanderbilt as a result of the allegations made against him by Kovacevich and other graduate students. (Pl. SOF ¶ 25; Def. SOF ¶ 14). Kovacevich also informed the SAA that she took her complaint to federal court and provided a website containing a list of academic offenders and advised that Demarest was included on the website. (Pl. SOF ¶ 25).

On February 24, 2020, Kovacevich provided the SAA a link to a website called www.leagle.com, which she claimed showed continuing harassment and attempts to derail her career by Demarest. (Pl. SOF ¶ 26). Kovacevich also provided a link to a website called www.aaup.org and advised it was a summary of her case against Demarest. (Pl. SOF ¶ 26).

Kovacevich also sent the SAA case files regarding the prior litigation between Kovacevich, Demarest, and Vanderbilt University. (Pl. SOF ¶ 27).[2]

In March 2020, the SAA advised Demarest that his name was removed from the SAA 2020 annual meeting and that the matter was referred to the SAA's Findings Verification Committee for review and recommendation. (Pl. SOF ¶ 28; Doc. No. 93-6). The SAA verification committee recommended that Demarest be barred from attending all SAA meetings and events for an indefinite term. (Pl. SOF ¶ 35).

Demarest filed an Amended Complaint against Kovacevich on May 1, 2024, bringing claims of breach of contract, interference with a contractual relationship, intentional interference with a business relationship, negligent infliction of emotional distress, and intentional infliction of emotional distress. (Doc. No. 53). Kovacevich moved for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

---

[2] The parties spend much of their briefs discussing details of events that took place nearly 20 years ago that are not relevant to the issues in this case.

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

**A.  Breach of Contract Claim**

Demarest contends that Kovacevich breached the following provisions of the 2008 settlement agreement:

> 4.  NO CONTACT: Plaintiff and Demarest hereby agree that they will not contact one another directly, nor shall either party request that another party contact the other on their behalf except through legal counsel, except as may be required by Sections 2 or 3 herein. This provision shall not apply in the event that Plaintiff and Demarest jointly participate in a panel discussion or other academic forum, in which case the provisions of Section 5 hereof shall be applicable.
>
> 5.4  In the event that any party is asked about the Lawsuit, each party shall respond only that "All allegations against Vanderbilt and/or Demarest were denied and have now been dismissed and I/the University have/has no further comment."
>
> 5.5  This Section 5 shall not restrict Plaintiff or Demarest from making reasonable, good faith, and professional academic critiques or criticisms of the other's research, interpretations or published work in the context of scientific and academic discourse and peer evaluation. Notwithstanding the forgoing, all critical comments relating to the character, nature or reputation of either party are strictly prohibited by this Section 5.

> 5.6    This non-disparagement provision is a material term of this Agreement. All parties agree that, should a court of competent jurisdiction find that any party has violated this non-disparagement provision, the violating party will pay to each non-violating party the sum of $2,500 for each such violation as liquidated damages, and not as a fine or penalty, together with the reasonable court costs and attorneys' fees actually incurred in collecting such sum. The parties agree that this Agreement may be enforced in the Chancery Court for Davidson County, Tennessee.
>
> 6.1    The parties agree that they, and all of them, will maintain in strict confidentiality, and will not disclose, to any person, including any member of the communications media, the press, journalists, reporters or any current, future or former employee of Vanderbilt, the terms and conditions of this Agreement except as expressly provided in this paragraph or pursuant to the terms of a court order or discovery request in a legal proceeding. In the event of a subpoena or request to produce this Agreement or to state the terms of the Agreement, the party to whom such request is directed will notify the other party of such request, so that either party may seek a protective order to procure the confidentiality of the Agreement. Vanderbilt acknowledges and agrees that Kovacevich may disclose the terms of this Agreement to her attorneys and/or her accountant or tax preparer who shall be advised of the terms of this confidentiality provision and will thereafter be bound by its provisions. Demarest may disclose the terms of this Agreement to his family, who shall be advised of the provisions of this confidentiality provision. Vanderbilt may disclose the terms of this Agreement to members of its administration and Trustees, who shall be advised of the provisions of this confidentiality provision. Vanderbilt may also disclose the general fact of the settlement of Kovacevich's claims against it, the non-disparagement provision and this confidentiality provision to members of the faculty of the Department of Anthropology but will not disclose the details of this Agreement to such persons. This confidentiality Agreement is a material term of this Agreement. All parties agree that, should a court of competent jurisdiction find that any party has violated this confidentiality provision, resulting in the public disclosure of any matter subject to this provision, the violating party will pay to each non-violating party the sum of $2,500 for each such violation as liquidated damages, and not as a fine or penalty, together with the reasonable court costs and attorneys' fees actually incurred in collecting such sum. The parties agree that this Agreement may be enforced in the Chancery Court for Davidson County, Tennessee.

(*See generally* Doc. No. 93-2). To establish a breach of contract under Tennessee law, a plaintiff must show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011) (internal citations

6

omitted). While the interpretation of a contract is a question of law, the determination of whether a party has fulfilled its obligations under a contract or is in breach of the contract is a question of fact. *Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 220, 225 (Tenn. Ct. App. 2009) (internal citations omitted).

In resolving a dispute concerning contract interpretation, the Court's task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889–90 (Tenn. 2002) (internal citation omitted). If a contract is unambiguous, a court must interpret it as written and not in accordance with a party's unexpressed intent. *Pitt v. Tyree Org. Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002) (internal citation omitted); *see also Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005) ("The parties' intent is presumed to be that specifically expressed in the body of the contract.").

This case arises from the non-disparagement and confidentiality provisions in the parties' 2008 settlement agreement and whether Kovacevich's communications to the SAA constituted a breach of those provisions. Specifically, in addition to the provisions identified above, the settlement agreement prohibits Kovacevich from "criticiz[ing], denigrat[ing], or mak[ing] any disparaging remarks concerning Demarest." (Doc. No. 93-2 at 5). The settlement agreement also provides that Kovacevich "represents that she has not, and will not, disclose any of the terms of this Agreement to any person." (*Id.* at 11).

Kovacevich does not dispute the non-disparagement and confidentiality provisions contained in the 2008 settlement agreement. Nor does Kovacevich dispute that she provided information to the SAA regarding Vanderbilt's investigation of Demarest and the parties' prior litigation. Instead, Kovacevich argues that she did not violate the 2008 settlement agreement

7

because the information she provided to the SAA was publicly available and provided to Kovacevich by the EEOC.

Kovacevich also contends that "[t]here is nothing in the settlement agreement which prohibits [her] from disclosing the existence of the settlement agreement or from complaining about retaliatory conduct by Demarest occurring after the signing of the settlement agreement." (Doc. No. 80 at 10). Kovacevich argues that "any alleged injury was caused by plaintiff Demarest's deceitful denial of the indisputable fact that he was disciplined and sanctioned as a result of the corroborated allegations of sexual harassment and gender discrimination made by his graduate students and his failure to report such discipline/sanctions to the SAA in accordance with the SAA's Code of Conduct." (*Id.*).

Notably, Demarest attached a document entitled "SAA Findings Verification Committee Case Review" to the original Complaint which provides, in relevant part, "Dr. Kovacevich has supplied one document….to support her assertion of a prior finding of Title IV determination made against Dr. Demarest in a separate, 2004-2005, Title IX case that resulted in sanctions, both unspecified and specified against Dr. Demarest" and "[a]dditional reference was provided via link to the Academic Sexual Misconduct Database connecting to an April 12, 2010 Court Memorandum in a civil case pursued by Dr. Kovacevich against Vanderbilt University…[i]n that case, Dr. Kovacevich [] argues that Vanderbilt University had violated the terms of the original settlement of the Title IV case… Helpfully, the memorandum outlines the *undisputed* legal history of the events stemming from the original sexual harassment claim filed by Kovacevich and others in 2004, its subsequent settlement, and more recent actions that purportedly violate the non-retaliation provisions in the original settlement." (Doc. No. 1-2 at PageID # 32-33).

The parties do not discuss their intent when agreeing to the non-disparagement and confidentiality provisions of the settlement agreement. Nor do they expound on the scope or meaning of such provisions and whether such provisions encapsulate Kovacevich's communications to the SAA. Moreover, while Kovacevich contends that "[n]one of the statements in [the EEOC letter Kovacevich sent to the SAA] are statements made by" her, she fails to cite to any supporting authority establishing that such communication falls outside the scope of the non-disparagement and confidentiality provisions. (Doc. No. 80 at 10).

The Court finds that a reasonable jury could find that Kovacevich breached the settlement agreement by disclosing details of Vanderbilt's investigation into Demarest and the earlier litigation between the parties, as well as providing a website link to the SAA regarding the prior litigation.

Accordingly, viewing the evidence in the light most favorable to Demarest, the Court finds genuine issues of material fact exist as to whether Kovacevich breached the settlement agreement in her disclosures to the SAA and summary judgment is denied on Demarest's breach of contract claim.

**B.     State Law Tort Claims**

Demarest also brings claims for interference with a contractual relationship, intentional interference with a business relationship, negligent infliction of emotional distress, and intentional infliction of emotional distress on the grounds that Kovacevich made false representations to the SAA which caused Demarest to be excluded from membership and participation in the SAA. Kovacevich moves for summary judgment on Demarest's state law tort claims on the grounds that the alleged conduct underlying the claims occurred in October 2019 and the statute of limitations expired before this lawsuit was filed.

9

"[B]ecause the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run, and if the defendant meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations." *Smith v. Hilliard*, 578 F. App'x 556, 562–63 (6th Cir. 2014) (internal citations omitted).

Notably, Demarest does not respond to Kovacevich's statute of limitations argument, but instead cites to an abundance of out-of-state case law and argues, with minimal citation to the record, that genuine issues of fact exist as to the tort claims.

As an initial matter, the Court notes that it may construe Demarest's failure to respond to Kovacevich's statute of limitations arguments as a concession. *Palma v. Johns*, 27 F.4th 419, 430 (6th Cir. 2022) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments."); *Cunningham v. Tennessee Cancer Specialists, PLLC*, 957 F. Supp. 2d 899, 921 (E.D. Tenn. 2013) ("It is well understood ... that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Rouse v. Caruso*, No. 06–CV–10961–DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011) (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F.Supp.2d 15, 25 (D.D.C.2003)); *see also Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 679 (S.D. Ohio 2005) (plaintiff abandoned claim by failing to address it in responsive briefing to defendant's motion for summary judgment); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F.Supp.2d 789, 798 n. 7 (W.D. Mich.1999) ('The Court will treat [due process] claim as abandoned because Kattar did not address it in his brief in response to Defendants' motion for summary

judgment.').""). Nonetheless, the Court will address the merits of Kovacevich's limitations argument.

"[I]n Tennessee, the appropriate statute of limitation for a claim is determined by the gravamen of the complaint, which in turn is assessed by the type of injuries claimed and damages sought." *Smith v. Rosenthal Collins Grp., LLC*, 340 F. Supp. 2d 860, 863 (W.D. Tenn. 2004) (internal citation omitted). The one-year statute of limitations set forth in Tenn. Code Ann. § 28-3-104 applies to negligent and intentional infliction of emotional distress claims. *Clark v. G4S Gov't Sols., Inc.*, No. 3:12-CV-72-PLR-CCS, 2014 WL 1154228, at *16 (E.D. Tenn. Mar. 21, 2014) ("To the extent Plaintiffs are asserting common law claims for intentional or negligent infliction of emotional distress, those claims are subject to the one-year personal injury statute of limitations contained in Tenn.Code. Ann. § 28–3–104. *Feild v. Graffagnino,* 514 F.Supp.2d 1036, 1043 (one-year statute of limitations applicable to personal tort actions alleging negligence and intentional infliction of emotional distress)."); *Evans v. Walgreen Co.*, 813 F. Supp. 2d 897, 938 (W.D. Tenn. 2011), *aff'd*, 559 F. App'x 508 (6th Cir. 2014) ("Evans' negligent infliction of emotional distress claim is time-barred under Tennessee's statute of limitations… Tennessee's one-year statute of limitations applies."). Moreover, a plaintiff "must file suit within one (1) year of when he or she, in the exercise of reasonable diligence, discovered or should have discovered the existence of his or her IIED claim." *Kizer v. Americold Logistics, L.L.C.*, No. 10-2922-STA-TMP, 2012 WL 1565643, at *6 (W.D. Tenn. May 2, 2012).

A three-year limitations period applies to claims for interference with a contract and intentional interference with business relationships. *Smith v. Rosenthal Collins Grp., LLC*, 340 F. Supp. 2d 860, 864 (W.D. Tenn. 2004) (applying a three-year limitations period to claims of tortious interference with business relationships and interference with contract and noting

11

"[c]ompare *Carlson v. Highter*, 612 F. Supp. 603, 605 (E.D. Tenn. 1985) (applying one-year statute of limitations from § 28-3-104 to action for tortious interference with contractual relations), with C*arruthers Ready-Mix, Inc. v. Cement Masons Local Union No. 520*, 779 F.2d 320, 324 (6th Cir. 1985) (applying three-year statute of limitations from § 28-3-105 to actions for inducement of breach of contract and unlawful interference with a business…) [and] *Collins v. Greene County Bank*, 916 S.W.2d 941, 947 (Tenn. Ct. App. 1995) (applying three-year statute of limitations to tort of interference with a contractual relationship)"); *Shafiqullah Koshani v. Barton*, 374 F. Supp. 3d 695, 702 (E.D. Tenn. 2019) ("Tennessee also applies a three-year statute of limitations to tort actions involving injuries to personal or real property. Tenn. Code. Ann. § 28-3-105. A claim for interference with contract falls under this three-year limitations period. *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31, n.1 (Tenn. 2007)."); *Precision Tracking Sols., Inc. v. Spireon, Inc.*, No. 3:12-CV-00626-PLR, 2014 WL 3058396, at *2 (E.D. Tenn. July 7, 2014) ("Tennessee Code Annotated § 28–3–105 provides a three-year statute of limitation for intentional interference with contracts."). "A claim accrues and the three-year limitations period commences 'when the plaintiffs discovered their injury or through the exercise of reasonable care and diligence, it should have been discovered.'" *Smith v. Music City Homes, LLC*, No. 3:12-CV-0681, 2015 WL 752011, at *10 (M.D. Tenn. Feb. 23, 2015) (internal citations omitted).

Here, the record establishes that Kovacevich notified the SAA of Vanderbilt's investigation into Demarest and the parties' prior litigation between the fall of 2019 and February 2020.[3] (Def. SOF ¶ 14, Pl. SOF ¶¶ 25, 26, 27, Doc. No. 93-3 at PageID # 800, Doc. No. 93-4 at PageID # 893,

---

[3] The Court notes that the date listed on Kovacevich's email to the SAA is indecipherable. (Doc. No. 93-4). Nonetheless, the record otherwise demonstrates that Kovacevich emailed the SAA between the fall of 2019 and February 2020.

12

Doc. No. 93-5 at PageID # 897-898, Doc. No. 1-2). At the latest, Demarest's claims accrued in March 2020 when he was removed from the SAA's annual meeting list. (Pl. SOF ¶ 28). However, Demarest waited to file his original Complaint until August 9, 2023,[4] well after the statute of limitations had expired. Accordingly, the Court finds that Kovacevich is entitled to summary judgment on Demarest's claims for interference with a contractual relationship, intentional interference with a business relationship, negligent infliction of emotional distress, and intentional infliction of emotional distress and those claims will be dismissed.

C. **Motions to Seal**

Kovacevich has also moved to file various documents under seal. (Doc. Nos. 76, 79, 81, 96). Kovacevich contends that she has filed the documents under seal "only because the Protective Order requires her to do so" and that because "these documents are filed in support of defendant's Motion for Summary Judgment, [she] does not believe narrowly tailored redactions are feasible" but she "takes no position on the appropriateness of sealing" and "understands and does not contest nonparty Vanderbilt's reasons for wishing to maintain this confidential and sensitive information under seal." (Doc. No. 100 at 1). Kovacevich also requests that the Protective Order be amended to require the party or nonparty designating a document as confidential to bear the burden of supporting the request to seal.

In response, Vanderbilt contends that following entry of the Protective Order, it produced several documents to Kovacevich, including the 2008 settlement agreement; a confidential employment agreement between Vanderbilt and Demarest dated December 20, 2005; and confidential correspondence discussing material terms of the employment agreement. Vanderbilt states that it recently learned both parties disclosed Vanderbilt's confidential material on the public

---

[4] Demarest filed his Amended Complaint on May 1, 2024. (Doc. No. 53).

docket in violation of the Protective Order and that counsel for Vanderbilt contacted the parties' counsel and requested that the respective filings be sealed and/or appropriately redacted. Vanderbilt states that Demarest's counsel indicated that they would comply but have yet to do so.

Vanderbilt specifically contends that the following documents should be sealed and/or redacted: the employment agreement and correspondence related to the employment agreement (Doc. No. 77); Kovacevich's memorandum in support of her motion for summary judgment (Doc. No. 80); Kovacevich's statement of undisputed material facts (Doc. No. 82); Demarest's response to Kovacevich's motion for summary judgment (Doc. No. 91); Demarest's counter statement of facts in response to Kovacevich's motion for summary judgment (Doc. No. 93); the 2008 settlement agreement (Doc. No. 93-2); Kovacevich's reply in support of her motion for summary judgment (Doc. No. 94); and Kovacevich's response to Demarest's counter-statement of facts (Doc. No. 95).

Vanderbilt contends that the settlement agreement (Doc. No. 93-2) should be sealed and that references to its material provisions (Doc. Nos. 94, 95) should be redacted because it has minimal relevance to the issues in this case, discloses the settlement amount, and contains a material confidentiality provision and provides for liquidated damages in the event of breach.

The Sixth Circuit has made clear that the standard for protecting documents during discovery with a protective order is very different from the standard for sealing documents placed in the record. *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 F. Appx. 202, 207 (6th Cir. 2016). In the latter situation, "the proponent of sealing must provide compelling reasons to seal the documents and demonstrate that the sealing is narrowly tailored to those reasons . . . [and] the district court has an independent duty to 'set forth specific findings and conclusions which justify nondisclosure to the public.'" *Id.*

14

Further, there is a strong presumption in favor of open records. *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831, 836 (6th Cir. 2017). The Sixth Circuit has held that a party seeking to seal a document from public view must provide "compelling reasons" to seal the document and demonstrate that sealing is narrowly tailored to serve those reasons by analyzing "in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305-06 (6th Cir. 2016). This standard is higher than that required for protecting documents during discovery. *Beauchamp v. Fed. Home Loan Mortg. Corp.*, 658 Fed. Appx. 202, 207 (6th Cir. 2016).

In making the determination to seal, the Court balances the litigants' privacy interests against the public's right of access. *Rudd Equipment Co., Inc. v. John Deere Const. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016). Typically, in civil litigation, "'only trade secrets, information covered by a recognized privilege (such as attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault)'" are enough to overcome the presumption of access. *Shane Grp.*, 825 F.3d at 308 (citation omitted).

The Court finds that the settlement amount has minimal relevance to the issues in dispute in this action and that the privacy interests of the parties and Vanderbilt in agreeing on the settlement amount outweigh the public's interest in the settlement agreement as a whole. However, the remaining provisions of the settlement agreement, including the confidentiality and non-disparagement provisions found in Sections 4, 5, and 6, are directly relevant to and at issue in this litigation and should be disclosed. Moreover, Vanderbilt has failed to provide compelling reasons for sealing and/or redacting the remaining provisions of the settlement agreement.

Vanderbilt also contends that the employment agreement (Doc. No. 77) should be sealed, that references to its material provisions should be redacted from the public docket, and that additional confidential correspondence between Vanderbilt employees related to the employment agreement filed at docket entry 77 should be sealed. Vanderbilt argues that the employment agreement contains private, confidential business information, describes "the resolution of a confidential, internal administrative process," and "reflects Plaintiff's personal information and highly sensitive employment records…[that] lack[] direct relevance to the claims at issue." (Doc. No. 102 at 8-9). Vanderbilt also argues that the correspondence related to the employment agreement involves internal dispute resolution processes and procedures and that Demarest, Kovacevich, and other graduate students involved have a right to privacy regarding the employment records.

The Court finds that the employment agreement and the correspondence at docket entry 77 have minimal relevance to the issues in this lawsuit and that privacy interests regarding the parties and third-party individuals, as well as Vanderbilt's internal and administrative business processes, outweigh the interest the public may have in these documents.

Accordingly, Kovacevich's motion to seal the employment agreement and related correspondence (Doc. No. 76) is granted. Kovacevich's remaining motions to seal (Doc. Nos. 79, 81, 96) are granted in part and denied in part. Specifically, Kovacevich shall publicly file a redacted version of the settlement agreement redacting only the settlement amount. Kovacevich shall also file redacted versions of other filings that reference the settlement amount, employment agreement, correspondence, and any other document that the Court has herein ordered be redacted, including references in Kovacevich's memorandum in support of her motion for summary judgment (Doc. No. 80), statement of material facts in support of her motion for summary judgment (Doc. No. 82),

reply in support of her motion for summary judgment (Doc. No. 94), and response to Demarest's counter-statement of facts (Doc. No. 95).

The Clerk is directed to seal Demarest's response to Kovacevich's motion for summary judgment (Doc. No. 91), statement of undisputed facts (Doc. No. 92), and counter-statement of facts (Doc. No. 93). Demarest shall publicly file a redacted response to Kovacevich's motion for summary judgment and statement of undisputed facts, as well as a redacted counter-statement of facts and associated filings (Doc. Nos. 93-1 through 93-7) in accordance with this Order. The parties shall file the redacted documents on or before September 1, 2025.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE