# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ARTHUR DEMAREST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:23-cv-00932 |
| | ) | |
| BRIGITTE KOVACEVICH, | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE FRENSLEY |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff/Counter-Defendant Arthur Demarest's ("Demarest") Motion for Summary Judgment. (Doc. No. 170). Defendant/Counter-Plaintiff Brigitte Kovacevich ("Kovacevich") filed a response in opposition (Doc. No. 183-1), and Demarest filed a reply (Doc. No. 185). For the reasons set forth below, Demarest's Motion for Summary Judgment (Doc. No. 170) is **GRANTED** in part and **DENIED** in part.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

The background of this action involves more than 20 years' worth of history between the parties and is set forth more fully in the Court's August 14, 2025, Memorandum granting in part and denying in part Kovacevich's motion for summary judgment. (Doc. No. 112).

For purposes of ruling on Demarest's pending motion, the relevant facts are as follows: Kovacevich filed an Amended Counterclaim against Demarest asserting claims for conspiracy and retaliation in violation of Tenn. Code Ann. § 4-21-101 et. seq., Title IX of the Education Amendments of 1972, and Title VII of the Civil Rights Act. (Doc. No. 56). In preparing for trial, the Court identified several issues in the parties' motions *in limine* and jointly filed proposed

pretrial orders necessitating further briefing. Accordingly, on May 29, 2026, the Court invited either party to move for summary judgment on Kovacevich's Counterclaim. (Doc. No. 165).

Demarest filed the pending motion for summary judgment on Kovacevich's counterclaims on the grounds that the claims are time-barred, that Kovacevich's claims arising before January 8, 2008, are barred by *res judicata* and the settlement agreement executed by the parties on January 8, 2008, (the "Agreement") provided Kovacevich with a contractual remedy for breach, that the conspiracy claim fails as a matter of law, and that no actionable retaliation claim has been established.

Kovacevich did not respond to Demarest's argument that the claims under Tenn. Code Ann. § 4-21-101 and Title IX are barred by the statute of limitations. Accordingly, summary judgment will be granted on those claims, and the Court need not address them herein.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's*

2

*Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.    ANALYSIS

**A.    Statute of Limitations**

"Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." *In re Arctic Exp. Inc.*, 636 F.3d 781, 802 (6th Cir. 2011). Demarest argues Kovacevich's civil conspiracy and Title VII claims are time-barred. In light of the disposition of the civil conspiracy claim, *see infra* III.C., the Court addresses only the statute of limitations with regard to the Title VII retaliation claim.

Demarest argues Kovacevich's Title VII retaliation claim is time-barred based solely on her deposition testimony that she was last employed by Vanderbilt in 2006 and therefore was not employed by Vanderbilt when she filed an EEOC complaint in 2019. (Doc. No. 176 at 9). However, Demarest fails to explain how or why Kovacevich's dates of employment with Vanderbilt have any import on the *timeliness* of her Title VII retaliation claim. In the absence of any such supporting argument or analysis, Demarest has also failed to show that summary judgment is appropriate in his favor on statute of limitation grounds.

3

**B.  Retaliation**

Demarest also argues that Kovacevich's retaliation claim fails as a matter of law. To establish a *prima facie* case of retaliation Kovacevich must show that: (1) she engaged in protected activity; (2) Demarest knew about it; (3) Demarest took a materially adverse employment action against her; and (4) there was a causal connection between her protected activity and the adverse action. *Kirkland v. City of Maryville, Tenn.*, 54 F.4th 901, 910 (6th Cir. 2022). For purposes of a retaliation claim, a materially adverse employment action is on which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster v. City of Kalamazoo*, 746 F.3d 714, 719 (6h Cir. 2014) (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 57, 68 (2006)). Moreover, "the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that solely affect the terms, conditions or status of employment, or only those acts that occur at the workplace." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) (citing *Burlington N.*, 548 U.S. at 62-66).

Typically, the Court applies the familiar *McDonnell-Douglas* burden-shifting framework to retaliation claims. *Laster,* 746 F.3d at 730. However, the parties did not engage with that framework; instead, they address only the prima facie elements of the claim. Accordingly, the Court has limited its analysis to those elements.

Kovacevich asserts that her participation in Vanderbilt's investigation into Demarest in response to complaints made about Demarest by graduate students in 2004 or 2005 while Kovacevich was a graduate student at Vanderbilt and her "opposition to sexual harassment and gender discrimination" is protected activity. (Doc. No. 183-1). She asserts that after she engaged in this protected activity, Demarest intentionally engaged in continued retaliatory conduct in the following years, including as recently as filing this lawsuit on August 31, 2023. (*Id.*).

4

Demarest argues Kovacevich cannot establish the third and fourth elements of the *prima facie* case. Demarest argues that summary judgment is appropriate because academic criticism is not a materially adverse action and he points to numerous communications between the parties at academic conferences and states that "[a]cademic disagreement is the ordinary medium of scholarly exchange."(Doc. No. 176 at 18). Demarest also argues that the filing of this lawsuit to enforce his contractual remedies under the Agreement does not constitute actionable retaliation because "[f]iling a civil action to enforce an independently existing contractual right does not constitute materially adverse action" and "Dr. Demarest filed suit to enforce the mutual non-disparagement and confidentiality liquidated damages provisions of the 2008 Agreement following Dr. Kovacevich's documented breach—not in response to any protected activity on her part" and that "Dr. Kovacevich acknowledged that she herself initiated prior litigation against Dr. Demarest. Specifically, she filed multiple EEOC charges and lawsuits against Dr. Demarest and Vanderbilt making claims similar to those in her counterclaim." (Doc. No. 176 at 22).

Demarest argues that his conduct was not a materially adverse employment action, but he does not explain why, in his view, the filing of a lawsuit would not dissuade an employee from engaging in protected conduct. Instead, he argues that because he filed suit to "enforce an independently existing contractual right," and not in response to protected activity, Kovacevich cannot show a causal relationship between her protected activity and the filing of the lawsuit. (Doc. No. 176 at 22). He asserts that because there is a "legitimate non-retaliatory basis for the challenged action," the retaliation theory fails. (*Id.*).

Demarest's challenge to Kovacevich's ability to establish causation does not show that she lacks proof with regard to the third element – that Demarest engaged in conduct that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. His

arguments with regard to causation are also unpersuasive. When analyzing the prima facie case, the Court does not consider the alleged non-retaliatory reason for the adverse action. *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc)). Moreover, to do so here, would require the Court to construe the facts in the light most favorable to the movant and reach conclusions on the merits of the breach of contract claim, which it cannot do at this stage.

Accordingly, summary judgment will be denied on the claim for retaliation.

## C. Conspiracy

Demarest argues that Kovacevich's conspiracy claim is barred by the intra-corporate conspiracy immunity doctrine because the conduct underlying the conspiracy claim was done by Vanderbilt employees acting within the scope of their employment.

"Under Tennessee law, '[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff.'" *Shipwash v. United Airlines, Inc.*, 28 F. Supp. 3d 740, 749 (E.D. Tenn. 2014) (internal citations omitted). Moreover, "[u]pon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme" and under Tennessee law, "a corporation can be capable of extra-corporate conspiracy where 'a corporation becomes vicariously liable for the conduct of its agents who conspire with other corporations or with outside third persons.'" *Id.* "Where the alleged co-conspirator is an agent or employee of the same corporate entity, however, Tennessee recognizes the 'intracorporate conspiracy immunity doctrine.'" *Id.* Under the intracorporate conspiracy immunity doctrine, "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a

6

single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of their employment." *Id.*

Here, Demarest contends that Kovacevich's conspiracy claim is premised upon "acts of a single institution acting through its agents" and that "Vanderbilt and its agents cannot, as a matter of law, satisfy the two-person plurality requirement for civil conspiracy." (Doc. No. 176).

In response, Kovacevich contends that "it is clear that Demarest's participation stems from conduct outside the scope of his employment and is therefore *ultra vires*" and that "[t]he duties of a professor are service to the University and the Department, teaching and research according to Vanderbilt's Faculty Manual." (Doc. No. 183-1 at 19). Kovacevich relies on a letter from Richard McCarty, the former Dean of Vanderbilt's College of Arts and Science, to Demarest, which Kovacevich contends "makes clear that the conduct of Demarest was contrary to the standards of conduct for faculty members at this University and clearly not within the scope of Demarest's employment" and that "[t]he effort to cover up this conduct and end any investigation is tantamount to obstruction of justice, clearly not within the scope of Demarest's employment" and "[a] reasonable juror could find that Demarest's conduct which motivated him to enter into the agreement as well as his entry into the agreement were not within the scope of his employment." *Id.* at 20.

Upon a review of the record, the Court finds that no genuine dispute of material facts exists as to whether Demarest acted as Vanderbilt's agent with regard to the conduct underlying the conspiracy claim. Kovacevich's Amended Counterclaim states that Demarest "is an agent of The Vanderbilt University" and that "[i]n or about late 2005 nonparty The Vanderbilt University and plaintiff Demarest entered into an unlawful conspiracy to violate Title VII of the Civil Rights Act as amended, Title IX of the Education Amendments of 1972 (including 34 C.F.R. 106.71) and the

7

Tennessee Human Rights Act whose purpose and objective was to discourage protected activity and opposition to gender discrimination by students and employees of The Vanderbilt University." (Doc. No. 56 ¶¶ 4, 7). The Amended Counterclaim also alleges that "[i]n furtherance of that conspiracy The Vanderbilt University and plaintiff Demarest entered into an agreement whose terms included an agreement to keep any discipline imposed on plaintiff Demarest secret and short term and to preserve plaintiff Demarest's employment by The Vanderbilt University," that "plaintiff Demarest and The Vanderbilt University agreed that The Vanderbilt University would turn a blind eye to any claims of retaliation by plaintiff Demarest directed at students and/or employees who reported gender discrimination and harassment by plaintiff Demarest," that "The Vanderbilt University would provide plaintiff Demarest with financial resources and expenses to attack the academic publications of former students including Dr. Kovacevich, in an effort to injure the careers of such former students including Dr. Kovacevich, all in an effort to protect both plaintiff Demarest and The Vanderbilt University from allegations of gender discrimination, sexual harassment and retaliation." (*Id.* ¶ 7).

Moreover, in Kovacevich's EEOC Charge filed on September 21, 2023, Kovacevich states that "[t]he Vanderbilt University through the conduct of its endowed Chaired Professor Demarest has engaged in a continued course of retaliation and harassment against me" and that "Dr. Demarest is an agent of Respondent The Vanderbilt University and participates in the promotion and tenure decisions of Respondent The Vanderbilt University as a senior member of its Anthropology Department" and sought relief "from the continued retaliation of [Vanderbilt's] senior endowed employee and agent, Professor Demarest." (Doc. No. 48-1).

With respect to the letter from Dean McCarty referenced by Kovacevich, the Court notes that Kovacevich refers to the document as "the undated letter from Dean McCarty to Demarest

(D.E. 76-77)." Upon review of docket entries 76 and 77 , the Court notes that there are *two* letters from Dean McCarty to Demarest. (Doc. No. 77 at PageID# 604-606, 614 – 615). In the first letter, dated September 2, 2005, Dean McCarty explained the findings of Vanderbilt's investigation into Demarest's alleged conduct "toward and treatment of graduate students in the Department of Anthropology who worked under [Demarest's] direction over the past several years" and resulted in certain "corrective actions" detailed in the letter. (Doc. No. 77 at PageID # 605-606). In the second letter, dated November 11, 2005, Dean McCarty advised Demarest that he understood Demarest had accepted "the sanctions" recommended by Dean McCarty and expected Demarest to conduct himself "at all times in a manner consistent with the standards of conduct as described in the *Vanderbilt Faculty Manual*." (Doc. No. 77 at PageID # 615) (emphasis included in original). Neither letter demonstrates that the alleged conduct underlying Kovacevich's conspiracy claim occurred outside the scope of Demarest's employment.

The record demonstrates that no genuine dispute of fact exists as to whether Demarest acted within the scope of his employment or as Vanderbilt's agent regarding the conduct underlying the conspiracy claim. Accordingly, Defendant's conspiracy claim is barred by the intracorporate conspiracy doctrine and fails as a matter of law. Summary judgment will be granted on Kovacevich's conspiracy claim.

## IV.    CONCLUSION

For the reasons discussed above, Demarest's motion for summary judgment (Doc. No. 170) will be **GRANTED** in part and **DENIED** in part. The motion will be **GRANTED** as to Kovacevich's claims for conspiracy, violation of the Tennessee Human Rights Act, and violation of Title IX. The motion will be **DENIED** as to Kovacevich's retaliation claim under Title VII.

An appropriate Order will enter.

9

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

10